UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:08 CR 70 |
| | ) | (No. 2:10 CV 110) |
| JOSHUA DON YOUNG | ) | |

## OPINION and ORDER

Joshua Don Young has filed a motion pursuant to 28 U.S.C. § 2255 requesting "an order setting aside his guilty plea and sentence, or in the Alternative, Vacating and Correcting his sentence such that he is sentenced based upon the proper total offense level pursuant to the Federal Sentencing Guidelines." (DE # 29 at 2.) Young argues that he pleaded guilty involuntarily because of ineffective assistance of counsel in regard to his plea agreement.

A § 2255 motion allows a person in federal custody to attack his or her conviction and sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. RULE 4 of the RULES GOVERNING § 2255 PROCEEDINGS requires the court to promptly examine the motion. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." RULE 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

On April 15, 2009, the court sentenced Young to concurrent terms of 108 months' imprisonment for two convictions of assaulting, resisting or impeding certain officers

by means and use of a dangerous weapon, and by inflicting bodily injury, in violation of 18 U.S.C. § 111. (DE # 27.) Young's convictions were based on his plea of guilty, accepted by the court on July 22, 2008, after a hearing conducted pursuant to FED. R. CRIM. P. 11. (DE # 20.) Young's plea followed from a written plea agreement he entered into with the government, which was filed with the court on July 15, 2008. (DE # 18.)

In Young's plea agreement, among other important terms, he agreed at paragraph 6 that the sentencing judge would make all factual and legal findings pertinent to his sentence, after consideration of input from the United States Probation Office in the form of a pre-sentence investigative report ("PSI"), input from counsel for the government and defense counsel, and the applicable law, including the United States Sentencing Guidelines ("Guidelines"). Consistent with this agreement, Young admits in his motion that, at the time he entered his plea of guilty, he did so "without knowledge of the specific base offense level and without any knowledge of the potential sentencing range for imprisonment."[1] (DE # 29 at 2, ¶ 2.) What Young did know at that time, as he acknowledged in sub-paragraphs 7(b) & (d) of his plea agreement, was that the maximum term of imprisonment he could receive was 20 years on each of the two counts. Moreover, at paragraph 7(g), Young agreed:

> I understand that the law gives a convicted person the right to appeal the conviction, the sentence imposed and any restitution imposed; I also understand that no one can predict the precise sentence that will be

---

[1] The court understands Young's reference to "potential sentencing range for imprisonment" to mean the Guidelines range, because it is clear that he did understand the statutory maximum.

> imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

Finally, in paragraph 11, Young agreed that no promises had been made to him other than those contained in the written plea agreement.

At first blush, it would seem that Young's waiver precludes the present motion, because his claim is not within the only category excepted: a claim of ineffective assistance of counsel related directly to the waiver's negotiation. Nevertheless, if Young's plea was in fact involuntary, then the plea agreement as a whole is negated, and the waiver, despite its broad breadth, is inoperative. *United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005). If his plea was voluntary, however, then the waiver must be enforced. *Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008). In other words, the waiver stands or falls along with the agreement of which it is a part. *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995).[2]

---

[2] Although a plea agreement and the plea itself are two different things, it is difficult to hypothesize circumstances where one, but not the other, would be involuntary. As has been noted, the terms of the plea agreement are "part of the whole package" along with the plea. *Nunez v. United States*, 495 F.3d 544, 545-46 (7th Cir. 2007), *vacated on other grounds*, – U.S. –, 128 S. Ct. 2990 (2008).

Young claims that his plea was involuntary because his attorney advised him that the application of the Guidelines to his offense as set forth in the PSI was correct,[3] but Young now believes the PSI was erroneous. Specifically, Young argues that his offense level was improperly computed because: 1) the base offense level from Guideline § 2A2.3 for minor assault, instead of from § 2A2.2 for aggravated assault, should have been used; 2) that even if § 2A2.2 was used, none of the specific offense characteristics raising the base offense level should have been applied (because of errors in the understanding of the meaning of intent, serious bodily injury, and self defense); 3) that his offense level should not have been increased by 2 levels pursuant to § 3C1.2 for reckless endangerment during flight;[4] and 4) that his offense level should not have been increased by two levels pursuant to § 3D1.4.

The problem with this argument is that the PSI setting forth this computation was not prepared until well after Young entered into his plea agreement, appeared before the court for a RULE 11 plea hearing, and entered his guilty plea. At the plea hearing the court carefully reviewed with Young the key provisions of the plea agreement and other matters required by RULE 11, and was satisfied that he understood the scope and terms of his agreement, of the rights he was waiving by pleading guilty,

---

[3] Somewhat contradicting Young's argument, his attorney did file a sentencing memorandum, objecting to some of the same aspects of the PSI that Young disagrees with now.

[4] Young, consistent with the terminology used in the PSI, refers to "obstruction of justice," but it is clear from the Guidelines section cited and the discussion that reckless endangerment during flight was the section used.

4

and that his decision to plead guilty in consideration of the agreement was an intelligent, knowing and voluntary decision. Only after accepting Young's plea did the court direct the United States Probation Office to prepare a presentence investigative report ("PSI"). His attorney's advice and performance with respect to a PSI not even in existence at the time simply cannot have had an impact on his decision to enter the plea agreement and plead guilty pursuant thereto.[5] *See Nunez v. United States*, 495 F.3d 544, 548 (7th Cir. 2007) ("ineffective assistance *after* the plea . . . cannot retroactively make the plea invalid"), *vacated on other grounds*, – U.S. –, 128 S. Ct. 2990 (2008). It is, therefore, absolutely clear that Young's plea was voluntary.

As an alternative to arguing that his plea was involuntary, Young argues that the court should simply vacate his sentence and impose a new sentence that is "correct," that is, one based on an offense level computed under the Guidelines consistent with

---

[5] The court acknowledges that a failure by defense counsel during plea negotiations to make a good-faith estimate of a likely sentence, which failure is a decisive factor in the decision to plead guilty, constitutes ineffective assistance of counsel. *Cieslowski*, 410 F.3d at 358-59. Young does not allege that his decision to plead guilty was based on an estimate by his attorney of his likely sentence. The closest Young comes to arguing that he entered the written plea agreement based on ineffective assistance is a statement in his § 2255 motion that his attorney provided "erroneous advice . . . in this case from the beginning to sentencing." (DE # 29 at 4, ¶ 9(d).) This assertion is not borne out by the arguments made in his memorandum, however. Moreover, at his plea hearing, Young admitted under oath that his attorney had not made a prediction of the exact sentence he might receive, and that he understood he might receive a different, and longer, sentence than any estimate made by his attorney, and which could be a sentence outside the Guidelines range as long as the 40-year statutory maximum sentence. Young cannot create an issue of fact as to the voluntariness of his plea by simply contradicting these admissions now. *See United States v. Stewart*, 198 F.3d 984, 986-87 (7th Cir. 1999); *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996); *Soto v. United States*, 37 F.3d 252, 254-55 (7th Cir. 1994).

5

Young's current arguments as to how they should have been applied. As noted, however, Young followed through on his decision to plead guilty after being advised in open court—consistent with the terms of his written plea agreement—that, no matter what the Guidelines range might be, he could be sentenced to a maximum imprisonment term of 40 years, that the court had the authority to, and might, impose that sentence, and that he was waiving any right to "appeal or to contest my conviction and my sentence . . . or the manner in which my conviction or my sentence . . . was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel." (DE # 29 at ¶ 7(g).) Because Young's plea was voluntary, this waiver stands, and even if his arguments as to the way the Guidelines should have been calculated and applied are correct—and this order should not be read as expressing any view whatsoever on that subject—those arguments fall squarely within the terms of the waiver. Thus, Young cannot present those arguments to the court in the present § 2255 motion, and the court will not consider them.

In short, Young's motion must be denied because: 1) his claim that his plea was involuntary is based on events that occurred *after* he pled, disproving the claim; and 2) his plea was voluntary, making his waiver of his right to file a collateral attack valid, barring the alternative basis of his present motion. Because Young has made no claims that impeach the validity of his plea and/or his waiver of his right to file a § 2255 motion, it "plainly appears from the motion . . . and the record of prior proceedings" that he is not entitled to relief, requiring the summary dismissal of his § 2255 motion.

Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts. Accordingly, Young's motion pursuant to 28 U.S.C. § 2255 (DE # 29) is summarily **DENIED** and **DISMISSED**.

The clerk shall **ENTER a FINAL JUDGMENT** dismissing the collateral civil proceeding (2:10 CV 110) with prejudice, and give notice to defendant-movant Young.

**SO ORDERED.**

Date: April 12, 2010

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT